UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LEON DAVIS,

                    Plaintiff,

v.

KYM REGAN and JEFF JOHNSON,

                    Defendants.

                                        /

Case No. 1:20-cv-73

Hon. Hala Y. Jarbou

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by Michael Leon Davis (sometimes referred to as "plaintiff" or "Davis"), a prisoner in the custody of the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF).  This matter is now before the Court on defendant Jeff Johnson's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 25).

### I.       Plaintiff's claim against defendant Johnson

Plaintiff alleged that he suffers from severe foot problems and "has been cleared by health care for special accommodations for shoes with brace [sic] and other special accommodations to assist in his medical treatment plan."  Compl. (ECF No. 1, PageID.4).  In June 2019, LCF Health Care "authorized by special medical accommodations, a specific type of shoe for Plaintiff to assist in his medical treatment plan for his feet and ankle conditions."  *Id*.  On July 11, 2019, defendant Quartermaster Supervisor Kym Regan gave plaintiff a pair of shoes that did not fit.  *Id*.[1]  Plaintiff tried to explain to Regan "that the shoes needed the brace [sic] which the pair

---

[1] Plaintiff's complaint names defendant Kym Regan as "Kym (Kim) Ragen."

given to me was not going to fit the brace [sic]." *Id*. Defendant Johnson looked at the shoes and "told me I could manage with those for the time being as far as he was concerned." *Id*. at PageID.5. Plaintiff filed a grievance that day which was exhausted through Step III "without any results favorable to Plaintiff." *Id*. On or about November 1, 2019, plaintiff's special accommodations were updated "for special shoes." *Id*. at PageID.4. As of the date he filed the complaint (January 28, 2020) plaintiff alleged that he "still does not have the shoes from Quartermaster employees Defendants Ragen [sic] and C/O Johnson." *Id*.

In Count One, plaintiff alleged that defendant Regan engaged in cruel and unusual punishment in violation of the 8th Amendment "by forcing him to walk around in severe pain and interferring [sic] in his medical treatment plan which borders on deliberate indifference to his serious medical need prescribed by a doctor." *Id*. at PageID.5. In Count Two, plaintiff alleged that defendant Johnson violated his 8th Amendment rights "by not adhering to the MDOC Policy governing medical special accommodations for shoes" and "allowed Plaintiff to leave the Quartermaster without the adequate shoe prescribed by the medical specialist." *Id*. at PageID.5-6. In Count Three, plaintiff alleged that defendants' acts constituted "a denial of his medical treatment plan which had been prescribed by a medical doctor in ordering a special shoe and brace to assist in walking to prevent pain and suffering." *Id*. at PageID.6. Finally, in Count Four, plaintiff alleged that defendants' acts constituted "a deliberate indifference attempt to deny Plaintiff adequate medical treatment when they engaged in in [sic] action to prevent him from receiving the special accommodation shoes ordered by health care employees, violating the laws of the United States and the State of Michigan", citing M.C.L. § 19.142.

## II.    Defendant Johnson's motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## B.      Lack of Exhaustion

### 1.      Exhaustion requirement

Defendant Johnson contends that plaintiff failed to exhaust the claims alleged against him.  The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available

administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

## 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### 3.    Discussion

As discussed, plaintiff alleged that defendants refused to provide him with special shoes on July 11, 2019.  The only grievance which could apply in this case is LCF-19-07-0667-03H ("667"), which included an incident date of July 10, 2019. Grievance 667 (ECF No. 27, PageID.127).  Plaintiff directed Grievance 667 at defendant Regan, stating, "I AM BEING DENIED MEDICAL APPROVED EQUIPMENT (ATHLETIC SHOES SIZE 8.5 6E[)] QUARTER MASTER EMPLOYEE K. REGAN REFUSED HONOR [sic] THE  MEDICAL PRESCRIPTION."  *Id*. (emphasis in original).  Plaintiff stated that "[w]hen this writer showed up for QM Callout on 7/10/19 to pick up Athletic Medical Approved Shoes, QM Employee K. Regan stated to this writer that it was her opinion that this writer did not need New Balance Shoes to deal with Neuropathy [sic]."  *Id*.  Plaintiff asked "that QM K. Regan be given a Directive to provide the shoes as ordered and not take on the role as a medical personnel."  *Id*.  This grievance was denied at Step I, with the denial upheld at Steps II and III.  *See* MDOC Prisoner Step III Grievance Report (ECF No. 27, PageID.124); Grievance 667 (PageID.125-128).  Plaintiff did not name defendant Jeff Johnson in Grievance 667, nor did plaintiff exhaust a separate grievance against Johnson related to the incident. *Id*.

In his response, plaintiff contends that defendants prevented him from filing a grievance against Johnson.  Plaintiff asserts that defendant Johnson was one of the respondents who denied Grievance 667 at Step I, that the grievance was denied at Steps II and III, and that

> These factual predicates prohibited Plaintiff from submitting another grievance on the subject matter in light of the policy definition for rejection of grievance.  Cf. PD-03.02.130, p 2, ¶ J § 2 – (…It raises issues that are duplicate of those raised in another grievance filed by the grievant).

*See* Plaintiff's Response (titled "Reply") (ECF No. 35, PageID.172).  In short, plaintiff contends that "the grievance procedure became unavailable to [him] insofar as Defendant Johnson is concerned and no exhaustion is required" because a separate grievance filed against Johnson related to the denial of "his needed medical approved shoes" would have been rejected as a duplicate grievance.  *Id*.

Plaintiff's contention that he is exempt from exhausting a grievance against defendant Johnson is without merit.  First, plaintiff could have included Johnson in Grievance 667. *See* PD 03.02.130 ¶ 6 ("Dates, times, places and names of all those involved in the issue being grieved are to be included" in the Step I grievance).  However, plaintiff chose to limit Grievance 667 to defendant Regan and sought an order directing Regan to provide him with shoes.

Second, plaintiff's contention that the MDOC prevented him from exhausting a claim against Johnson is without merit. Plaintiff failed to file a grievance against Johnson.  Now, in hindsight, plaintiff attempts to avoid his error by speculating that the MDOC would have rejected such a grievance.  As Johnson points out in his reply brief,

> Although a grievance may be rejected as duplicative, that is a decision for the grievance coordinator to make—not Davis. But because Davis did not file a grievance naming Johnson at Step I, he never fulfilled his responsibility of presenting his issues against Johnson through the MDOC grievance process, and he has failed to exhaust his claims against him.

Defendant's Reply (ECF No. 38, PageID.186).

For these reasons, plaintiff has failed to properly exhaust his claims against defendant Jeff Johnson.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, Johnson's motion for summary judgment should be granted.

### III.  Plaintiff's state law claim under M.C.L. § 19.142

The Court should *sua sponte* dismiss plaintiff's claim raised in Count Four that defendants violated M.C.L. § 19.142.  Title 28 U.S.C. § 1915(e)(2)(B)(ii) provides in pertinent part that "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted . . ."  In reviewing plaintiff's alleged violation of M.C.L. § 19.142, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (the *Iqbal* plausibility standard applies when dismissing a claim under § 1915(e)(2)(B)(ii)).  Here, plaintiff has failed to state a claim under M.C.L. § 19.142 ("Conduct prohibited on public property; penalties").  This statute prohibits certain acts on public property. Among other things, the statute states that a person shall not "[c]onduct himself or herself in a disorderly manner upon the premises or annoy, harass, assault, or disturb an inmate or person cared for or under the control of the board or department having jurisdiction."  *See* M.C.L. § 19.142(1)(e).  A person who performs a prohibited act is guilty of a misdemeanor punishable by imprisonment for not less than 10 days or more than 60 days, a fine of not more than $50.00, or both.  M.C.L. § 19.142(2).  Plaintiff, an individual, lacks standing to enforce this criminal statute against defendants. *See Lopp v. Washington*, No. 1:19-cv-540, 2019 WL 4161190 at *4 (W.D.

7

Mich. Sept. 3, 2019) ("Plaintiff [prisoner] lacks both standing and legal authority to enforce Mich. Comp. Laws § 19.142. A private citizen 'lacks a judicially cognizable interest in the prosecution or nonprosecution of another.' *Diamond v. Charles*, 476 U.S. 54, 64 (1986)[.]").   Accordingly, the Court should dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.    Recommendation

For these reasons, I respectfully recommend that defendant Jeff Johnson's motion for summary judgment (ECF No. 25) be **GRANTED** and that he be **DISMISSED** from this case.

I further recommend that pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court **DISMISS** plaintiff's claims that defendants violated M.C.L. § 19.142.

Dated:  October 20, 2021                                    /s/ Ray Kent
                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).