UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LEON DAVIS,

    Plaintiff,

v.

KYM REGAN and JEFF JOHNSON,

    Defendants.

_____/

Case No. 1:20-cv-73

Hon. Jane M. Beckering

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by Michael Leon Davis (referred to as "plaintiff" or "Davis"), a prisoner in the custody of the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF). Davis sued two defendants, Corrections Officer Jeff Johnson and Quartermaster Kimberly Reagan (named as "Kym Regan").[1] The Court dismissed Johnson, leaving Reagan as the sole defendant remaining in this case. This matter is now before the Court on defendant Reagan's motion for summary judgment (ECF No. 62).

    **I.**    **Davis' claim against Quartermaster Reagan**

Davis set forth the following allegations. Davis suffers from severe foot problems and "has been cleared by health care for special accommodations for shoes with brace [sic] and other special accommodations to assist in his medical treatment plan." Compl. (ECF No. 1, PageID.4). In June 2019, LCF Health Care "authorized by special medical accommodations, a specific type of shoe for Plaintiff to assist in his medical treatment plan for his feet and ankle conditions." *Id*.

---

[1] Documents in this case spell defendant Kimberly Reagan's name in different ways. Her first name appears as "Kym" or "Kim" and her surname appears as "Regan" or "Ragen".

1

On July 11, 2019, Quartermaster Reagan gave Davis a pair of shoes that did not fit. *Id*. Davis tried to explain to Reagan "that the shoes needed the brace [sic] which the pair given to me was not going to fit the brace [sic]." *Id*.[2] Davis filed a grievance that day which was exhausted through Step III "without any results favorable to Plaintiff." *Id*.

On or about November 1, 2019, Davis' special accommodations were updated "for special shoes." *Id*. at PageID.5. On an unspecified date, Quartermaster Reagan "refus[ed] to order the shoes." *Id*. According to Davis, "I was provided with the brace for the shoes, but no shoes and the brace do [sic] not fit any of the shoes I have." *Id*.

Davis alleged four counts. In Count One, Davis alleged that Quartermaster Reagan engaged in cruel and unusual punishment in violation of the Eighth Amendment "by forcing him to walk around in severe pain and interferring [sic] in his medical treatment plan which borders on deliberate indifference to his serious medical need prescribed by a doctor." *Id*. at PageID.5. In Count Two, Davis alleged that former defendant Johnson violated his Eighth Amendment rights "by not adhering to the MDOC Policy governing medical special accommodations for shoes" and "allowed Plaintiff to leave the Quartermaster without the adequate shoe prescribed by the medical specialist." *Id*. at PageID.5-6. In Count Three, Davis alleged that defendants' acts constituted "a denial of his medical treatment plan which had been prescribed by a medical doctor in ordering a special shoe and brace to assist in walking to prevent pain and suffering." *Id*. at PageID.6. In Count Four, Davis alleged that defendants' acts constituted "a deliberate indifference attempt to deny Plaintiff adequate medical treatment when they engaged in in [sic] action to prevent him from receiving the special accommodation shoes ordered by health care employees, violating the laws of the United States and the State of Michigan", citing M.C.L. § 19.142.

---

[2] As discussed, *infra*, Davis did not receive the brace until over a month later on August 27, 2019.

The Court dismissed Davis' claims against defendant Johnson and for violation of M.C.L. § 19.142. *See* Order (ECF No. 49). This matter is now before the Court on defendant Reagan's motion for summary judgment as to Davis' Eighth Amendment claims alleged against her in Counts One, Three and Four.[3]

## II. Defendant Reagan's motion for summary judgment

### A. Legal standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[3] *See* Amended Case Management Order (ECF No. 51) (stating that "The Court has dismissed all claims except for plaintiff's § 1983 claims against defendant Kym Regan. *See* R&R (ECF No. 44); Order (ECF No. 49)."

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Eighth Amendment claim

#### 1. Legal Standard

Davis seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

4

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The records reflect that defendant Quartermaster Reagan held the position of storekeeper. *See* MCSC Employee History (ECF No. 63-9, PageID.371). Non-medical personnel such as Quartermaster Reagan can exhibit deliberate indifference to serious medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). In determining whether Reagan was deliberately indifferent to Davis' serious medical needs, the Court views her actions as that of a layperson, not as a medical professional. "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented." *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005) (internal quotation marks, citations and brackets omitted). "As *Farmer* makes clear, the officers must not only be aware of the facts from which they could draw the inference that [a prisoner] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.

5

### 2. Davis' claims against Quartermaster Reagan

Davis' complaint boils down to two claims against Quartermaster Reagan. First, that on July 11, 2019, Reagan did not give Davis a pair of shoes that fit. Second, that sometime after November 1, 2019, Reagan did not provide Davis with "special shoes", presumably "high top shoes" suggested by an outside doctor. The Court construes both of these claims as alleging that Quartermaster Reagan was deliberately indifferent to Davis' serious medical needs.

### 3. Evidence presented

Commencing on January 26, 2017, Davis' Special Accommodation Orders (SAOs) included "Medical Equipment / Supplies: MSI athletic shoe ACMO ok".[4] *See* SAOs (June 27, 2019) (ECF No. 63-6, PageID.345).

On December 4, 2018, Davis received a pair of size 8.5 6E "NB" [New Balance] shoes. *See* Prisoner Declaration ("Shoe Receipt") (ECF No. 63-7, PageID.351).

On or about January 23, 2019, Davis broke his left ankle. MDOC Medical Records (ECF No. 63-3, PageID.317-318). Davis received treatment for the ankle and follow-up care from Tudor Tien, M.D. at Henry Ford Allegiance Orthopedics, where his ankle was placed in a cast on February 7, 2019. Henry Ford Records (ECF No. 63-4, PageID.321-324). On March 7, 2019, the cast was removed and Davis was placed in a boot brace. *Id*. at PageID.325-329. On April 17, 2019, Davis was told to use the boot brace as needed, that he will be given a prescription for a compression wrap (compression socks for swelling and ACE wrap), and that he will return for a follow-up around July 17, 2019. *Id*. at PageID.330-333.

---

[4] The Court notes that in previous lawsuits, ACMO has been used as an abbreviation for assistant chief medical officer.

After this injury, Davis had Medical Detail Orders (MDOs) including an order for a wheelchair and pusher which started on March 28, 2019, and stopped on August 6, 2019. *See* MDOs (ECF No. 63-6, PageID.348).

On June 27, 2019, the SAOs continued to list "Medical Equipment / Supplies: MSI athletic shoe ACMO ok". *See* SAOs (June 27, 2019) (ECF No. 63-6, PageID.345).

On June 28, 2019, new SAOs included an order for "Other: Athletic shoes ACMO approved indefinately [sic]." *See* SAOs (June 28, 2019) (ECF No. 63-6, PageID.346). The Court notes that while the "Athletic shoes" were approved indefinitely, the order expired on June 28, 2020. *Id*.

On July 17, 2019, Dr. Tien performed a follow-up of Davis' left ankle. Henry Ford Records at PageID.334). At that time, the doctor noted that

> [Davis] rates his left ankle pain is a 5/10. He would like to discuss problems with getting athletic type shoes.

*Id*. In discussing future treatment, Dr. Tien noted:

> He would benefit from a more supportive shoe wear (high top shoes). Will provide a prescription for an AFO ["Ankle Foot Orthosis"]. Follow up on a prn basis.
>
> The patient requires a custom brace/supportive shoe. The patient's brace/shoes will be needed for longer than 6 months. The brace/shoes are needed to control their ankle/foot in multiple plans for safe ambulation and healing.

*Id*. at PageID.336. It appears that the AFO is the "brace" referred to by Davis in the complaint.

On July 25, 2019, a new SAO included the order for "Athletic shoes" and a new order for "Other: Left Shelf AFO ACMO expires 7/24/19." *See* SAOs (July 25, 2019) (ECF No. 63-6, PageID.347).[5] While Dr. Tien opined that Davis "would benefit from a more supportive

---

[5] The Court notes that the left shelf SAO is confusing because the "start date" for the "Left Shelf" order is listed as 7/25/2019, the "stop date" as 7/25/2020, and the expiration date as 7/24/19. SAOs (July 25, 2019) at PageID.347.

shoe wear (high top shoes)", there is no evidence that the MDOC issued a new SAO or MDO directing the issuance of "high top shoes."

On July 28, 2019, Davis was supposed to receive the Left Shelf AFO but that did not occur. The Clinical Progress Notes state:

> Scheduled to receive shelf AFO. Medical detail states ACMO approval expired 7-24-19. Unable to issue to inmate. Inmate states quarter master needs a shoe size in order to order his approved athletic shoes. He also says he needs new compression socks because of a fungus ruining his last pair. Note added to his upcoming follow up appointment with provider.

MDOC Medical Records (ECF No. 63-8, PageID.361). A later Clinical Progress Note indicates that "Patient was sized for AFO and dispensed on 8/27/19." *Id*. at PageID.369.

On October 24, 2019, Davis received a pair of 8.5 6E New Balance shoes. *See* Shoe Receipt at PageID.352. The receipt includes a notation "didn't want to try on." *Id*.

On October 30, 2019, Dr. Tien examined Davis and stated the following plan:

> He may discontinue the AFO, he has no foot drop. His distal fibula fracture has healed and clinically he has no pain over the lateral malleolus. Will prescribe compression stockings. He should see internal medicine for routine follow up of bilateral leg swelling. Follow up as needed.

Henry Ford Records at PageID.339, 342.

On November 1, 2019, the SAOs included an order for "Other: Athletic shoes ACMO approved indefinately [sic]" (from June 28, 2019, through June 28, 2020). *See* SAOs (November 1, 2019) (ECF No. 63-6, PageID.349). There was no SAO for an AFO of "Left Shelf" (brace). The omission of this accommodation is consistent with Dr. Tien's October 30, 2019 examination, stating that Davis "may discontinue the AFO."

Finally, on September 28, 2020 (about eight months after filing this lawsuit), Davis received a pair of 8.5 6E New Balance shoes. *See* Shoe Receipt (ECF No. 63-7, PageID.353).

**4.**      **Discussion**

**a.**      **Deliberate Indifference - Objective component**

Quartermaster Reagan contends that Davis failed to meet the objective component of a deliberate indifference claim because he did not have a serious medical need during the relevant time period. The Court rejects this contention. It is undisputed that Davis broke his ankle on or about January 23, 2019, that he received treatment at a hospital over several months, that he was placed in a cast, that he was issued a wheelchair, that he received boot, and that he required "custom brace/supportive shoes." While Dr. Tien noted that fracture had healed by October 30, 2019, the doctor continued to prescribe compression socks and routine follow-ups for leg swelling.

**b.**      **Deliberate indifference – subjective component**

Quartermaster Reagan contends that there is no evidence to support the subjective component of the deliberate indifference claim. The Court agrees. Because Quartermaster Reagan was a layperson and not a physician, the applicable standard is whether "a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented." *Estate of Harbin*, 147 Fed. Appx. at 571. In applying that standard here, Quartermaster Reagan must not only be aware of the facts from which she could draw the inference that Davis had a serious medical need, she must also draw that inference. *Id.* In addition, Reagan could not intentionally interfere with prescribed treatment. *See Estelle*, 429 U.S. at 104-05.

Here, Davis had SAOs for athletic shoes with no mention of high-top shoes. As discussed, Davis received athletic shoes consistent with the SAOs on: December 4, 2018; October 24, 2019; and September 28, 2020. In short, Davis had the appropriate athletic shoes when he requested special shoes from Reagan in July 2019. Even if Reagan saw that Davis was wearing the AFO (brace) after August 27, 2019, she was not a doctor, and she could rely on the SAOs and

MDOs when dispensing shoes. "[A] non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to the medical professionals' opinions." *McGaw v. Sevier County., Tennessee*, 715 Fed. Appx. 495, 498 (6th Cir. 2017) (internal quotation marks omitted). Accordingly, Quartermaster Reagan's motion for summary judgment should be granted.

### 5. Qualified immunity

Finally, Quartermaster Reagan also asserts qualified immunity. Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The existence of qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). "On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party

asserting the injury and drawing all reasonable inferences in that party's favor." *Id*. When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

Based on this record, Quartermaster Reagan is entitled to qualified immunity. For the reasons discussed, Reagan did not violate Davis' constitutional rights. A Quartermaster in Reagan's position would have no reason to believe that the shoes identified in Davis' SAOs and MDOs were not medically acceptable for his condition. *See McGaw*, 715 Fed. Appx. at 498.

### III.  Recommendation

Accordingly, I respectfully recommend that defendant Reagan's motion for summary judgment (ECF No. 62) be **GRANTED** and that this action be terminated.


Dated:  January 25, 2023                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).